IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.E.R.M.,<br><br>              Petitioner,<br><br>     vs.<br><br>CHRISTOPHER CHESTNUT, WARDEN,<br>CALIFORNIA CITY CORRECTIONAL<br>CENTER, *et al.*,<br><br>              Respondents. | Civil No. 1: 26-cv-03049-MWJS<br><br>ORDER GRANTING PETITION FOR<br>WRIT OF HABEAS CORPUS<br><br>A# 076-844-297 |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner J.E.R.M.[1] is an immigration detainee proceeding with a petition for a

writ of habeas corpus under 28 U.S.C. § 2241.  Dkt. No. 1.

Petitioner entered the United States in 1990, when he was two years old, fearing

persecution in his home country.  He arrived at the border with his aunt, at which point

immigration officials waived him into the United States.  Dkt. No. 1, at pg. 6.  In 1998,

---

[1]     Petitioner moved for permission to proceed using a pseudonym when this case
was filed.  Dkt. No. 4.  Respondents did not oppose the motion.  Dkt. No. 7, at pg. 1.
Given this non-opposition, and based on the court's review of the severity of the harm,
the reasonableness of the Petitioner's proffered fears, and Petitioner's vulnerability to
retaliation, the court finds that the need for anonymity in this case—given the nature of
these proceedings, which have required no discovery practice, evidentiary hearing, or
trial—outweighs countervailing considerations.  *See Does I thru XXIII v. Advanced Textile
Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000).   Accordingly, Petitioner's motion to
proceed via pseudonym, Dkt. No. 4, is GRANTED.

he and his family applied for asylum, and that case was denied and later dismissed, but "went on appeal due to ineffective assistance of counsel." *Id*. In 2007, Petitioner was ordered to report to ICE for removal proceedings and was thereafter enrolled in the Intensive Supervision Appearance Program ("ISAP") with electronic monitoring. Petitioner complied with the conditions of supervision, including required home visits, in-person reporting, and check-ins, and ICE gradually reduced his reporting obligations over time. Around 2013, Petitioner was granted Deferred Action for Childhood Arrivals ("DACA") and obtained a driver's license, social security number, and work authorization. Petitioner has spent most of his life in a part of California, living with his parents and building community ties, and receives ongoing treatment for a medical condition. In November 2015, an immigration judge administratively closed Petitioner's removal proceedings.

The record also reflects several encounters with law enforcement over the years. *Id*. at pg. 7; Dkt. Nos. 7-1, 7-2. In 2011, Petitioner was arrested for driving under the influence, although the charges were apparently dropped, and in 2021 he was arrested on two separate occasions for domestic violence, with those charges later dismissed. In February 2022, Petitioner was again arrested for driving under the influence and was placed on a one-year probationary term with imposition of sentence suspended, after which he attended the Second Chance Hayward Recovery Center. He

was again arrested in 2024 on charges of disorderly conduct, which were later dismissed.  His application to renew DACA was denied in May 2025.

Petitioner continued complying with his ISAP reporting obligations for over fifteen years, through 2025.  In November 2025, Petitioner reported to a scheduled check-in at the Sansome Street ICE office in San Francisco, only to discover that the office was closed for the holidays.  He immediately contacted ISAP officials, left voicemail messages and emails seeking guidance, and returned to the office the following business day, at which point he was informed that he had not violated his reporting obligations.  Then, on December 8, 2025, Petitioner appeared for another pre-scheduled ICE check-in at the Sansome Street office, where he was detained by immigration officers without explanation and transported to the California City Detention Center.  He has been in custody since.

One could imagine immigration authorities contending that Petitioner's prior arrests or other intervening events constituted changed circumstances warranting renewed detention.  But respondents do not make such an argument here.  Nor does the present record indicate that, at the time Petitioner was detained during his December 2025 ICE check-in, immigration officials identified any individualized basis for his arrest or detention, pointed to any changed circumstances, or asserted that Petitioner posed either a danger to the community or a flight risk.  Instead, as presently framed, the record reflects only that Petitioner appeared for a scheduled check-in and was taken

into custody without any articulated explanation tying the detention to a public safety or flight risk determination.

Petitioner now invokes this court's habeas jurisdiction, contending that his arrest and detention, without any pre-deprivation process, violated his constitutional due process rights.  Many district judges, both in this district and others, have granted relief in cases analogous to this one.  *See, e.g.*, *John M.Z. v. Noem*, No. 1:26-cv-2925, 2026 WL 1125790 (E.D. Cal. Apr. 23, 2026); *Pengling Miao v. Chestnut*, No. 1:26-cv-01271, 2026 WL 947020 (E.D. Cal. Apr. 8, 2026); *Yon Kervis U. v. Chestnut*, No. 1:25-cv-2066, 2026 WL 88983 (E.D. Cal. Jan. 12, 2026).  The court has considered these precedents and concluded that they reached the correct result based on the current state of Supreme Court and circuit precedent.  To resolve this case, therefore, the court need only determine whether there is any factual or legal basis to distinguish those prior decisions.

In their opposition to the Petition, Respondents maintain that Petitioner's detention is lawful based on their interpretation of 8 U.S.C. § 1225(b), which they contend applies to Petitioner and requires his mandatory detention.  Respondents suggest that the denial of Petitioner's application to renew DACA was warranted based on his encounters with law enforcement, but they do not suggest that those prior interactions with law enforcement (or any evidence underlying those interactions) serves to materially distinguish this case. Dkt. No. 7, at pg. 1-2.  Instead, they argue that

Petitioner lacks a liberty interest protected by the Due Process Clause given his "history of encounters with law enforcement" and despite the "agency's previous determination to grant release," especially if the release was conditional and those conditions were violated. *Id.* at pg. 3. They do not, however, argue that Petitioner's encounters with law enforcement rendered him subject to mandatory detention under any provision of the Immigration and Nationality Act that mandates the detention of noncitizens charged or convicted of certain crimes. Nor do they argue that any immigration official made any individualized determination about Petitioner's release status based on his arrest or any evidence underlying it. Respondents' argument rests instead on their contention that "[i]t is the statute that is the sole source of constitutional rights in the case of arriving aliens, and the statute here provides for mandatory detention." *Id.* But they "acknowledge the cases" which have held "to the contrary in this District" and offer no persuasive reasoning that would lead the court to conclude that this case is distinguishable from those other cases. *Id.* at pg. 2.

Given the lack of any factual or legal issues in this case that would distinguish it from the prior orders that this court has found persuasive, IT IS HEREBY ORDERED that the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED. Respondents are ORDERED to immediately release Petitioner J.E.R.M. (A# 076-844-297) from their custody. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.

Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing.  At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.  This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

And as this order makes clear, due process does not prevent the government from seeking to detain Petitioner lawfully.  If the government believes Petitioner's criminal history (or any of the underlying circumstances) is sufficient to justify his detention, it may seek his detention by providing him with adequate pre-deprivation process, as set out above.  The court is granting the petition solely because the government did not provide that process here.

//

//

//

6

The Clerk of Court is DIRECTED to close this case and enter judgment for

Petitioner.

 IT IS SO ORDERED.

DATED:  May 5, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

Civil No. 1:26-cv-03049-MWJS; *J.E.R.M. v. Chestnut,* et al.; ORDER GRANTING
PETITION FOR WRIT OF HABEAS CORPUS